Frederick Herbert McLAY, Respondent,

v.

Bonnie Juanita McLAY, Appellant.

No. WD 30913.

Missouri Court of Appeals,
Western District.

April 7, 1980.

Wm. G. McCaffree, Nevada, for appellant.

Respondent did not file brief.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is an action for dissolution. The judgment is modified and affirmed.

Three points of error are raised. The first point alleges that the trial court failed to vacate that portion of the original judgment awarding $150.00 per month maintenance and to enter an award for maintenance commensurate with appellant's needs. The second point alleges that the trial court abused its discretion in making no allowance for legal services, cost of transcript preparation, briefs and for time expended upon appeal. The third and final point alleges that this court should make a finding that the trial court had jurisdiction pursuant to Rule 51.06 and Transition Rule 15.06(b).

Original petitioner (husband) is respondent herein and he files no brief.

The parties were married in Bates County, Missouri in 1966 and were separated in October of 1978. Although no issue was born of this marriage, appellant became pregnant some four or five times. Each pregnancy resulted in a miscarriage, with the evidence supporting the fact that on at least two occasions, physical abuse by respondent produced the miscarriages. The parties had limited income and acquired a minimum amount of marital assets.

Appellant is legally blind as the result of an incurable eye disease. She was possessed of this handicap at the inception of the marriage and it has progressively worsened. As a result of this handicap, she receives the maximum blind pension fund allotment of $160.00 per month.

Upon trial, the following additional facts were established. Appellant had sporadic and limited income sources due to her physical handicap. Respondent was employed by one Jim Tiona. He operated a truck for his employer in the winter and did farm work during the summer. Evidence supported by respondent's W–2 form showed a gross income of $11,686.27. Marital assets consisted of household goods ($700.00), a microwave oven ($400.00), saddle and tack ($75.00), two guns ($160.00), a Brahma Bull ($500.00 sold by respondent prior to trial) and a 1973 Ford Pickup Truck ($1,700.00). In addition, the parties were possessed of nonmarital property which the court set off to each respective party as follows:

| WIFE | HUSBAND |
| --- | --- |
| Buckskin Horse $200.00 | Arabian Horse $100.00 |
| | House $15,000.00 |
| | Certificates of Deposit $22,000.00 |

The debts of the parties which occurred during the marriage totaled some $4,055.00. Of this sum, $455.00 represented sums borrowed by appellant upon respondent's fail-

ure to provide her with any support. Respondent was ordered to pay said indebtedness. Appellant filed a statement of monthly living expenses totaling $523.00. Respondent filed no such statement, but from his testimony his living expenses (which included creditor payments) totaled between $400.00 and $500.00 per month.

The trial court entered the following decree: The marriage was found to be irretrievably broken. The appellant was awarded all household goods and microwave oven, monthly maintenance of $150.00 per month, $500.00 in attorney fees, the Buckskin Horse, Arabian Horse, saddle and tack. Respondent was awarded the two rifles, the pickup truck, all interest in the house property and the certificates of deposit. Respondent was ordered to pay all of his own debts, the debt due on the microwave oven, the debt on the truck, the debt on an organ, the debt to a local oil company and a $500.00 doctor bill for services rendered to appellant.[1]

Following the original decree, appellant filed her motion to vacate the decree and pleading for additional monthly maintenance. The evidence upon the post-trial motion revealed that in addition to respondent's failure to make payment of monthly maintenance payments, appellant was making some $22.00 to $24.00 per week for 90 hours of work. The work consisted of babysitting in her home. While appellant testified to making some effort to secure employment, her efforts resulted in no other employment because of her blindness.

The evidence revealed respondent had, since trial, moved into the house to which he was an heir. This move eliminated monthly rental of approximately $85.00 per month for respondent.

Explanation of the house and certificates of deposit are in order. These items were part of an estate of a relative of respondent. Respondent's mother (age 56) was heir to a life estate in this house and upon her demise, respondent inherits a life estate

in said house. Upon respondent's demise, the house passes to his younger brother. The certificates of deposit provide for a life estate in respondent's mother as to the interest earned upon the certificates during her life. Upon her demise, the certificates become the property of respondent.

The trial court heard evidence upon the post-trial motion and ruled that appellant was permitted to prosecute her appeal as a poor person. The court also awarded her an additional $150.00 attorney fees for after-trial expenses. Appellant was denied a requested increase in monthly maintenance and attorney fees and costs for prosecution of her appeal.

The net result of the trial court action left the parties in the following posture regarding monthly income and expenses. Appellant has a net monthly income of $398.00, with monthly expenses of $583.00. Respondent has a net monthly income of $784.00. Respondent testified his monthly expenses (at time of trial) were between $400.00 and $500.00. Since trial, and as a result of respondent's moving into a rental-free residence, his monthly expenses have been reduced by $85.00.

Review of this case is made pursuant to Rule 73.01 as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) and on the issue of attorney fees pursuant to *Kieffer v. Kieffer*, 590 S.W.2d 915 (Mo. banc 1979). In addition, neither party requested findings of facts or conclusions of law.

The instant case provides that absent some monthly maintenance, appellant herein is virtually limited to a monthly income of $160.00 per month represented by her state assistance as a blind person. The record clearly shows that appellant has tried to secure gainful employment, but by reason of her impairment, neither immediate nor future employment prospects appear likely. The only employment she has had to date is a 90-hour work week which nets an income of $22.00 to $24.00 weekly.

---

1. The payment of the medical bill was contingent upon noncoverage under respondent's medical insurance policy. The record fails to establish whether or not there was insurance coverage and the court assumes this is only a contingent debt.

On the other hand, respondent is an able-bodied individual gainfully employed with the possibility of future increased employment. The evidence reflects a reduced monthly cost of living for respondent upon his ability to live rent free in a modern residence.

■ Point one is sustained in appellant's favor and the judgment is modified to reflect an increase in the monthly maintenance to the favor of appellant in the sum of $75.00, which would bring her total monthly maintenance to $225.00. The finding by the trial court was against the weight of the evidence under *Murphy v. Carron, supra.*

The trial court recognized appellant was without sufficient financial means to defend herself in this action and to prosecute her appeal. This is manifested by the award of attorney fees for trial and after-trial proceedings. In addition, the trial court granted appellant leave to prosecute her appeal as a poor person.

For some time, a decision of granting or denying attorney fees has been conflicting as to whether or not it is essential for a showing of financial need on the part of the spouse or former spouse seeking an award of attorney fees in a proceeding under the DISSOLUTION OF MARRIAGE ACT. In 1979, the State Supreme Court, in the case of *Kieffer v. Kieffer, supra,* concluded that disposition of such matters as attorney fees are to include the financial resources of the parties *and other factors are to be taken into account as well.* It was concluded in that decision that the granting or denial of attorney fees rests upon the discretion of the trial court and review of the trial court action is to be premised upon whether or not there was any abuse in the exercise thereof.

■ Under the doctrine of *Kieffer v. Kieffer, supra,* the evidence herein shows an abuse of discretion by the trial court upon its refusal to grant appellant an allowance for attorney fees to prosecute her appeal. This appeal consists of time preparation of a brief and all other attending requisites for the appeal short of oral argument. Since argument has been waived, some cost to appellant has been saved.

Upon the evidence, the trial court should have granted to appellant attorney fees for the prosecution of this appeal. Point two is sustained in favor of appellant and the judgment is modified to reflect an award of attorney fees for purposes of appeal in the sum of $250.00.

■ Point three raised by appellant alleges the trial court erred in assuming jurisdiction and issuing a decree for the reason that the assignment of the associate circuit judge was void. The facts of the instant case show that Judge Keyser undertook to hear this case and at the conclusion of the evidence, the circuit judge declared a mistrial and disqualified himself. It is further pointed out to this court that the docket for the circuit court reflects a transfer request asking that the associate circuit judge be assigned the case. The circuit judge who heard the evidence originally is the presiding judge of the circuit.

It is further brought to the attention of this court that under date of January 16, 1979, the docket reflects the assignment of this case to the associate circuit judge in conformity to local court rule no. 5.

On this appeal, appellant expresses concern that the associate circuit judge was without jurisdiction to hear and to render judgment in this case. Authority for the assignment of this case to the associate circuit judge is to be found in § 517.520, RSMo, effective January 2, 1979. The pertinent section reads as follows:

"1. If a judge is disqualified or disqualifies himself from serving in a particular case, he shall promptly notify the presiding judge of the circuit of such disqualification, and the presiding judge shall thereupon assign a qualified associate circuit judge who is readily available to hear the case or he may assign a circuit judge who is readily available to hear the case. If no qualified associate circuit judge within the circuit is readily available, the presiding judge of the circuit may request, and if no circuit judge or qualified associate circuit judge is

readily available the presiding judge of the circuit shall request, the supreme court to transfer a judge to hear the case and the supreme court shall thereupon transfer a judge.

\* \* \* \* \* \*

4. Provision may be made by local circuit court rule for the assignment of cases to other judges within the circuit in lieu of action by the presiding judge of the circuit as provided in subsections 1 or 2 of this section."

Pursuant to the foregoing statute, the associate circuit judge did have jurisdiction to take up the instant case and to render judgment therein. Point three is ruled against appellant.

The trial court judgment awarding appellant the sum of $150.00 per month maintenance is modified to order respondent to pay appellant the monthly sum of $225.00 as maintenance. The judgment is further modified to award appellant the sum of $250.00 in attorney fees for prosecution of this appeal and said fees are to be paid by respondent. All costs of this proceeding are taxed against respondent. The judgment in all other respects is affirmed.

All concur.